## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James R. D., | Civ. No. 19-989 (BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| Andrew M. Saul,[1]<br>Commissioner of<br>Social Security, | |
| Defendant. | |

Edward C. Olson, Esq., Karl E. Osterhout, Esq., Osterhout Disability law, LLC, counsel for Plaintiff.

James D. Sides, Esq., Social Security Administration – Office of the General Counsel, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Social Security disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 18, 21.) For the reasons stated below, Plaintiff's motion is denied and Defendant's motion is granted.

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

## I.     Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") on June 7, 2012, alleging a disability onset date of December 19, 2011. (Tr. 21, 166–73, 194.) [2] The Social Security Administration ("SSA") denied his claim initially and on reconsideration. (*Id.* at 21, 73, 112.) Plaintiff filed a civil action challenging that decision, and this Court remanded the matter to the ALJ for further proceedings. *See Dimond v. Berryhill*, No. CV 16-322 (BRT), 2017 WL 2972721 (D. Minn. Mar. 31, 2017). The ALJ held a remand hearing on December 21, 2017, and issued a new decision denying benefits on February 8, 2019. (Tr. 698–728.) The SSA Appeals Council once again denied Plaintiff's request for review. (*Id.* at 688–91.) The ALJ's decision is therefore final, and Plaintiff now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g). (*See* Doc. No. 1, Compl.)

## II.     Factual Background

Plaintiff was twenty-one years old on December 19, 2011, his alleged disability onset date, the date he was involved in a motor vehicle accident. (Tr. 42.) Plaintiff drove his vehicle off an overpass, was ejected from the vehicle, and fell twenty-five feet and to the ground. (*Id.* at 311.) Plaintiff was in a coma for almost two weeks and underwent multiple surgeries and remained hospitalized until January 16, 2012. (*Id.* at 24, 320, 329, 351, 353, 362, 380–81.) Since the accident, Plaintiff has suffered chronic neck and back

---

[2]     Throughout this Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 12.)

pain, loss of hearing in his right ear, trouble with vision in his right eye, headaches,

cognitive disorder, and depressive disorder. (*Id.* at 23.)

After high school,[3] Plaintiff joined the National Guard and worked as a helicopter

technician. (*Id.* at 207.) At the time of the accident, Plaintiff was also employed as a

forklift driver for a hardwood flooring company. (*Id.*) Plaintiff's has worked a number of

past jobs, including fast food worker, maintenance worker, stock worker, and auto

mechanic. (*Id.* at 253–59.)

### III.    The ALJ's Findings and Decision on Remand

On March 31, 2017, this Court remanded the matter to the ALJ with instructions

to:

> (1) determine a corrected RFC for Plaintiff that addresses the conclusions
> set forth in Dr. Lewis's opinion, including Plaintiff's tendency to forget
> instructions after 20–30 minutes, and (2) determine whether Plaintiff can
> perform his past relevant work or any other work in light of the corrected
> RFC. If the ALJ determines that Dr. Lewis's conclusions on their own are
> insufficient to properly determine the RFC, then the record must be further
> developed to determine Plaintiff's limitations relating to remembering
> instructions.

*Dimond*, 2017 WL 2972721, at *8–9. The ALJ held a remand hearing at which the ALJ

heard testimony from Plaintiff's mother, and the independent medical expert testimony of

Dr. Karen Butler (Tr. 758–88). The ALJ also received additional records of Plaintiff's

treatment into the record. (*See id.* at 1035–1107.)

---

[3]    Plaintiff completed high school through Grade 12, but did not have enough credits
to graduate. He earned a GED in the Army. (Tr. 531.)

Following the remand hearing, the ALJ issued a decision on March 13, 2018, finding Plaintiff not disabled (*Id.* at 695–728). In reaching this decision, the ALJ proceeded through the five-step evaluation process provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4). These steps are as follows: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant is severely impaired; (3) whether the impairment meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform other jobs available in sufficient numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 19, 2011, the alleged onset date. (Tr. 701.) At step two, the ALJ determined that Plaintiff had the following severe impairments: depressive disorder; cognitive disorder; hearing loss in the right ear; double vision following orbital fracture on the right side; headaches; history of right ankle fracture; and left AC joint separation. (*Id.* at 701–03.) Having determined that Plaintiff had severe impairments, the ALJ continued to step three of the analysis, where a claimant must show that his impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(iii). When examining Plaintiff's physical impairments, the ALJ reviewed the Listing of Impairments, specifically Sections 2.10 (hearing loss), 2.02 (loss of central visual acuity), 2.03 (contraction of the visual field in the better eye), 2.04 (loss of visual efficiency in the better eye), 1.02 (major dysfunction of a joint), and 11.02(B) and (D)

4

(epilepsy). (Tr. 703–04.) The ALJ found that the evidence in the record does not meet the criteria of those listings. (*Id.*)

When examining Plaintiff's cognitive impairments, the ALJ specifically reviewed Sections 12.02 (organic mental disorders) and 12.04 (affective disorders). (Tr. 704.) Paragraph B of both listings requires that an applicant demonstrate:

Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

1. Understand, remember, or apply information.

2. Interact with others.

3. Concentrate, persist, or maintain pace.

4. Adapt or manage oneself.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00E. Here, The ALJ found that Plaintiff has a marked limitation in adapting and managing oneself, but only moderate limitations in understanding, remembering, and applying information, interacting with others, and with regard to concentration, persistence, and pace. (*Id.* at 709.) Accordingly, the ALJ found that the "paragraph B" criteria were not satisfied, and that Plaintiff does not have an impairment or combination of impairments that met or equaled a listing.[4] [5] (*Id.* at 710.)

---

[4]     The ALJ also found no evidence of a medically documented "serious and persistent" mental illness "of extended duration," and thus determined that the Paragraph C criteria were not satisfied. (*Id.* at 710.)

[5]     The ALJ noted that new mental health listings took effect on January 17, 2017, and she considered Plaintiff's mental health impairments in accordance with the new regulations. Specifically, the ALJ stated:

At step four of the analysis, the ALJ formulated a revised RFC,[6] including new language aligning the RFC with specific vocational preparation found in the Dictionary of Occupational Titles, and also excluding work that involves high quota or pace requirements. Specifically, the ALJ concluded that Plaintiff has the ability to perform "light work as defined in 20 C.F.R. 404.1567(b)," except only

> routine, repetitive, simple, 3-to-4 step tasks and instructions that are fixed and predictable from day to day and would align with a specific vocational preparation of 1 or 2 as defined in the Dictionary of Occupational Titles,

---

> [T]o the extent the former listings were similar to those in effect currently, the conclusions of the State Agency consultants [were] considered and given weight in determining the degree of restriction in the "paragraph B" criteria discussed below as the State agency assessments support no more than moderate limitation in the mental areas of functioning. To the extent the new "paragraph B" and "paragraph C" consider areas of functioning outside the consideration of the previous "paragraph B" and "paragraph C" criteria, the undersigned has discussed the pertinent evidence below.

(Tr. 704.)

[6]     Prior to this Court's remand, the ALJ found that Plaintiff had the RFC to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)," except only

> routine, repetitive, 3-to-4 step tasks and instructions; tasks that can be performed independently, meaning they would not require collaboration or teamwork with coworkers for completion of the task and would not require direct interaction with the public for completion of the task; no strict production rate pace; as these are routine and repetitive tasks, there would be minimal, if any, workplace changes from day to day; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; tasks that would not require bilateral depth perception; and tasks that would allow for hearing loss in the right ear and overall hearing at the noise level reflected as 'moderate' as defined in the companion publication in the DOT for noise level; and no work at heights or with hazards or hazardous machinery.

(Tr. 29.)

occasional brief and superficial contact with coworkers, the public, and supervisors, and more specifically, these are tasks that could be performed independently meaning they would not require collaboration or teamwork with coworkers for completion and would not require direct interaction with the public for completion, no strict production rate pace involved in these tasks or no high production goal or quota type work such as might be found along an assembly line, occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, occasional stooping, kneeling, crouching and crawling, these are tasks that would not require bilateral depth perception due to visual deficits in one eye, tasks that also would allow hearing loss in the right ear but overall hearing at a noise level reflected as moderate as defined in the companion publication to the Dictionary of Occupational Titles for noise level, and no work at heights or with hazards or hazardous machinery.

(Tr. 710–11.) In her decision on remand, the ALJ determined that the "claimant is limited mentally and socially to accommodate mental health symptoms and impairments" and was "further limited to 'light' work with additional postural, visual, and noise restrictions to accommodate his physical impairments. However, the [ALJ was] unable to conclude the claimant completely unable to work as he alleges, due to significant inconsistencies in the records as a whole and lack of objective findings to support the degree of restriction he allege[s]." (*Id.* at 712.)

In determining Plaintiff's RFC, the ALJ analyzed Plaintiff's symptoms using the two-step process: (1) whether Plaintiff's medical impairment could reasonably be expected to produce his symptoms, and (2) the extent to which the symptoms limit the claimant's functioning. (*Id.* at 711.) The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff and his mother's "statements concerning the intensity, persistence and limiting

effects" of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 712.)

In making this determination, the ALJ afforded substantial weight to the opinions of the state agency psychological consultants because their "opinions are generally consistent with the weight of the evidence . . . including examinations, objective findings, mental status examinations, daily and overall activities, observations by providers, course of treatment, and medications." (*Id.* at 715.) The ALJ also gave great weight to the testimony and opinion provided at the second hearing by the impartial medical expert, Dr. Karen Butler, a PhD-licensed psychologist. The ALJ explained that she did so because Dr. Butler is "an expert in mental health," possesses "specialized knowledge evaluating mental health impairments under the regulations," "reviewed the claimant's entire medical record as submitted and pertaining to the time period at issue," and because Dr. Butler's "conclusions are consistent with the evidence as a whole." (*Id.* at 713.)

The ALJ, however, gave little weight to the opinion of Dr. James F. Lewis, the Social Security Administration's consultative examiner. Consistent with the remand order, the ALJ addressed the conclusions of Dr. Lewis, including his statement that the claimant would forget instructions after twenty to thirty minutes. In her detailed decision, the ALJ provided a "number of reasons" for assigning Dr. Lewis's opinion little weight. Those reasons are thoroughly discussed in the ALJ's thirty-one-page decision. The ALJ explains her reasoning as to why the twenty to thirty-minute limitation was not supported by substantial evidence based on Dr. Lewis's own testing and mental status examination

findings, and the record as a whole. The ALJ also discussed the testimony of Plaintiff's mother, including testimony regarding Plaintiff's care for his son, preparation of meals, performance of household chores, and management of his own bills and finances.

As mentioned above, the ALJ called Dr. Karen Butler as an independent medical expert pursuant to the remand order to further assess the Dr. Lewis's opined limits and overall evidence. In preparation for the hearing, Dr. Butler performed a longitudinal review of the record. (*Id.* at 713.) Dr. Butler "provided detailed, thorough testimony with regard to [the twenty to thirty-minute limitation] as well as the entire record as a whole." (*Id.*) In addressing Dr. Lewis's opinion, Dr. Butler testified that there were no examples in the consultative examination or report itself to support the conclusion that Plaintiff forgets instructions after twenty to thirty minutes or that Plaintiff was as limited in the work setting as opined by Dr. Lewis. (*Id.* at 717–18.) The ALJ gave Dr. Butler's testimony and opinion great weight because "she reviewed the entire record and provided such thorough testimony utilizing her medical expertise and experience analyzing mental health impairments under the standards set forth in the regulations." (*Id.* at 716.) The ALJ also noted that Dr. Butler testified that any cognitive issues supported by the evidence were accommodated in the RFC, and that there were no examples by any treating provider that supported the twenty to thirty-minute limitation indicated by Dr. Lewis. (*Id.* at 717.)

As part of her analysis of Plaintiff's RFC, the ALJ noted that Plaintiff's reported difficulties relating to memory were primarily subjectively reported, and the regulations direct that in order to support limitations in the RFC, a medical impairment or limitation

must be documented with objective findings. (*Id.* at 718.) The ALJ determined that there

was insufficient objective evidence to document the alleged memory deficits articulated

by Dr. Lewis. (*Id.*) The ALJ's assignment of little weight to Dr. Lewis's opinion was also

consistent with the opinions of the state agency psychological consultants, who likewise

assigned Dr. Lewis's conclusions little weight because they were "not consistent with his

examination findings and testing, and they were also not consistent with

neuropsychological testing in the file and the claimant's overall report of activities." (*Id.*)

Applying Plaintiff's revised RFC, the ALJ went on to conclude that through the

date last insured, Plaintiff was unable to perform any past relevant work. (*Id.* at 726.)

However, at step five the ALJ concluded that based on the Vocational Expert's ("VE")

testimony, considering Plaintiff's age, education, work experience, and RFC, there are

jobs that existed in significant numbers in the national economy that the claimant could

have performed. (*Id.* at 727 (citing 20 C.F.R. §§ 404.1569; 404.1569(a)).) Specifically,

the VE testified that given his limitations, Plaintiff could still perform the requirements of

representative occupations such as bench assembly tasks, electronics worker, and

molding machine tender. (*Id.*) Accordingly, the ALJ found Plaintiff capable of making a

successful adjustment to other work existing in significant numbers in the national and

state economies, and concluded that Plaintiff was not disabled from his alleged onset date

through the date of the decision. (*Id.* at 728.)

## DISCUSSION

### I.   Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. See 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607

11

F.3d at 536 (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court thus considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner*, 607 F.3d at 536. If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

## II.     Analysis of the ALJ's Decision

Plaintiff argues that the Court should reverse and remand this matter for immediate award of benefits or, in the alternative, remand it to the ALJ for further proceedings, for two reasons. First, Plaintiff argues that the ALJ failed to assign appropriate weight to the medical opinion of Dr. Lewis, specifically as to his conclusion that Plaintiff forgets instructions after twenty to thirty minutes. (Pl.'s Mem. in Support 3.) And second, Plaintiff argues that the ALJ erred in determining that Plaintiff's limitations do not meet the requirements of Listings 12.02 and 12.04. (*Id.* at 4.) Defendant opposes Plaintiff's motion, arguing that the ALJ's decision is supported by substantial evidence in

the record, and has moved to dismiss Plaintiff's claims. (*See generally* Def.'s Mem. in

Support.)

### A.    The ALJ Did Not Err in Assigning Little Weight to Dr. Lewis's Opinion

Plaintiff argues that the ALJ erred on remand by assigning little weight to

Dr. Lewis's opinion, while assigning great weight to Dr. Butler's opinion, because

Dr. Butler was a non-examining consultant who is directly contradicted by treating or

examining sources. (Pl.'s Mem. in Support. 20.) Specifically, Plaintiff contends that the

ALJ should have assigned greater weight to Dr. Lewis's conclusion that Plaintiff forgets

instructions after twenty to thirty minutes. (*Id.* at 19–27.)

The ALJ appropriately considered the various criteria set forth in Section

404.1527 for evaluating opinion evidence.[7] Plaintiff does not have an ongoing treatment

relationship with Dr. Lewis and his opinion is thus non-controlling. When determining

---

[7]    While the relevant code sections governing how medical sources are to be weighed were revised effective March 27, 2017, the old rules still apply to claims, including Plaintiff's, that were filed before that date. *See* 20 C.F.R. §§ 404.1520c, 404.1527. Under those rules, the SSA "will not consider an acceptable medical source to be [a] treating source" if the applicant's relationship with the source is based not on his need for treatment or evaluation, "but solely on your need to obtain a report in support of your claim for disability." 20 C.F.R. § 404.1527(a)(2). Instead, a source such as Dr. Lewis—the SSA's consultative examiner to whom Plaintiff was referred for evaluation as part of his application for disability benefits—is considered "a nontreating source." *Id.* Dr. Lewis is not a treating source, and thus his opinion is not entitled to controlling weight. The new regulations no longer use the term "treating source," and instead require that a medical source be evaluated in light of four principle factors. Of these, the most important are supportability and consistency, followed by relationship with the claimant, and whether the source has a specialization in the subject matter in question. *See* 20 C.F.R. § 404.1520c(b), (c).

how much weight to grant a non-controlling medical opinion in formulating an RFC, the ALJ must consider the following factors:

> (1) whether the source has examined the claimant; (2) the length, nature and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)).

Plaintiff was referred to Dr. James F. Lewis—a Licensed Psychologist—for a consultative psychological evaluation of Plaintiff's "intellect, memory skills, a Mental Status Examination, and a Description of Daily Functioning." (Tr. 531.) He was seen by Dr. Lewis only once, on December 18, 2012, in Dr. Lewis's office. (*Id.* at 531–37.) Dr. Lewis noted that "[i]t was often necessary to repeat verbal instructions and it took him extra time to process his verbal and motor responses." (*Id.* at 532.) Several tests were given and set forth in detail in Dr. Lewis's report. (*Id.* at 532–35.) A summary assessment and diagnostic impression was included:

> [Plaintiff] was intellectually functioning in the low average range on the WAIS-4. Non verbal perceptual organizational skills were in the upper limits of the average range. Speed of visual processing was in the borderline range. Scores were in the borderline range on the WMS-4 in visual working short-term memory and delayed visual memory. The afore borderline range skills support a diagnosis of a Cognitive Disorder NOS related to a head injury in an automobile accident in December 2011. James reported he has problems remembering what he reads it takes him extra time to write, he forgets his passwords to computer programs, and forgets what people tell him.

14

(*Id.* at 536.) The opinion at issue here is Dr. Lewis's opinion that Plaintiff is "apt to forget the directions in 20–30 minutes." (*Id.* at 537.)

Pursuant to this Court's previous order remanding this matter for further proceedings, the ALJ appointed an independent medical examiner, Dr. Karen Butler, to perform a longitudinal review of the record as a whole, including evidence submitted in the second hearing, and then to testify as to Plaintiff's limitations based on that review using her expertise and specialized knowledge in assessing medical impairments and resulting limitations within the SSA disability standard. (*Id.* at 698.) At the remand hearing, Dr. Butler testified as follows:

> It said the Claimant was able to remember two-step directions on a job, Your Honor, but that he'd be apt to forget directions in 20 or 30 minutes . . . . Again, the Claimant, per the doctor's report, Your Honor, he said would be only able to – would forget things after 20 to 30 minutes. That might be so, Your Honor, but I didn't see any examples of it in Exhibit 7F and, again, his memory testing, while definitely demonstrating weaknesses in the visual working memory and delayed memory, in that those scores are in the borderline range versus his IQ scores, which are in the average to low-average range, but those scores are still above the Social Security cutoff . . .

(*Id.* at 770.) Asked whether there is any evidence in the record as a whole to support the twenty to thirty-minute limitation, Dr. Butler responded:

> [A]gain in Dr. Lewis's report, it says the Claimant has trouble remembering what he reads; said it takes him extra time to write; that he forgets the passwords to computer programs; forgets what people tell him. Again, those are – the last two things are relatively common occurrences. There are – again, I would just say no specific examples of an inability to remember directions in 20 to 30 minutes, and the memory testing, again, while low and in the borderline range and below his IQ is still above the Social Security threshold of the 1st or 2nd percentile, with his lowest scores being at the 6th and 7th percentile.

(*Id.* at 773–74.) When asked whether the fact that Dr. Lewis had to repeat instructions during the examination was evidence to support the twenty to thirty-minute limitation, Dr. Butler stated:

> [W]hen he says that he has to repeat the instructions, that's more in the area of immediate memory as opposed to, I tell you the instruction now, and 30 minutes from now, I ask you to be able to repeat that. There are some tasks in the context of the examination where he was asked to remember some objects, and he remembered those objects immediately at 5 minutes and at 30 minutes . . . . I'm not saying he doesn't have an inability to remember instructions after 20 or 30 minutes. I'm just saying in [Dr. Lewis's] report, he didn't – he gave that conclusion, but he didn't give examples, and while the Claimant has weaknesses in terms of some areas of memory, he's got other areas of memory where he's in the low-average range, and his IQ overall is in the low-average to average range. So, all of those things taken together – again, I just said I didn't see examples of that particular thing.

(*Id.* at 777–78.)

Moreover, when asked whether Plaintiff's low test scores could have led Dr. Lewis to conclude he would have trouble remembering things after twenty to thirty minutes, Dr. Butler responded, "these scores seem to say that the area he isn't good in is visual working memory. His auditory memory, his visual immediate memory, all of those things are in the low-average range." (*Id.* at 778.) And when asked whether Plaintiff's failure to stay on topic supports Dr. Lewis's opinion, Dr. Butler answered, "Well, staying on topic, though, isn't forgetting instructions after 20 or 30 minutes." (*Id.* at 781.) Later. Dr. Butler clarified that concerns regarding staying on topic "speak to some cognitive difficulties on limitations," but do not "specify a timeframe, and if we're having difficulty focusing on one topic, we're back to an immediate interaction as opposed to a delayed or something that suggests a longer period of time." (*Id.* at 787.)

16

The ALJ assigned great weight to Dr. Butler's testimony and opinion because, unlike Dr. Lewis, she had the opportunity to perform a longitudinal review the record as a whole, her opinion was consistent with evidence in the record, and she cited to medical evidence in the record to support her conclusions. *See Brush v. Berryhill*, 294 F. Supp. 3d 241, 259–60 (S.D.N.Y. 2018) (assigning great weight to the opinions of two independent medical examiners).

The ALJ provided several reasons for assigning little weight to Dr. Lewis's conclusion related to Plaintiff's ability to remember instructions:

> Generally, the claimant's treating providers indicate the claimant has no difficulty understanding treatment recommendations, maintaining conversation in the treatment setting, or asking appropriate questions. The claimant attended the first hearing and answered questions appropriately, there was no evidence of apparent difficulties understanding and attending to the content of the hearing. Overall, the weight of the evidence is consistent with the claimant having at most "moderate" difficulties understanding, remembering, or applying information, but does not support a "marked" level of restriction in this domain of functioning as it is defined in the regulations.
>
> In making this assessment, the undersigned gives less weight to Mr. Lewis's opinion regarding forgetting instructions in 20–30 minutes and gives greater weight to Dr. Butler's opinion and the overall evidence she cited in support of her assessment as well as her expertise and specialized knowledge in assessing impairments and resulting limitations within the SSA disability standard. During the consultative examination, the claimant reported spending his time watching movies on Netflix, playing games on Xbox, heating food in the microwave, and sometimes doing laundry. In his function report, he indicated he cares for his son, feeding him and changing his diapers, and is able to pay bills, count change and handle banking accounts . . . His mother also reported the claimant was able to care for his son, feed his son and change his diapers, prepared his own meals, did laundry with reminders, and shopped for himself as well as managed his own finances . . . . Overall, the ability to understand, remember, or apply information to perform these and other tasks as well as the testing support no more than moderate in this area and do not support forgetting

> instructions after 20–30 minutes. As a result, less weight is given to
> Mr. Lewis's statement of forgetting instruction after 20–30 minutes and to
> the testimony and allegations from claimant's mother regarding his
> disabling memory and greater weight is given to Dr. Butler's opinion and
> the evidence she cited as well as the evidence set forth above."

(Tr. 706–07.)

The ALJ's decision explained why her decision to assign little weight to

Dr. Lewis's opinions was consistent with other evidence in the record. For example, the

ALJ's cited to Plaintiff's ability to play video games, do his laundry, prepare simple

meals in the microwave, pay bills, and go grocery shopping. (*Id.* at 707.) And, the ALJ

noted that the weight given was consistent with the State Agency psychological

consultants who reviewed Plaintiff's file and assigned Dr. Lewis's conclusions little

weight because "they were not consistent with his examination findings and testing, and

they were also not consistent with neuropsychological testing in the file and the

claimant's overall report of activities." (*Id.* at 716.)

The Court's review is limited to a determination of whether substantial evidence in

the record as a whole supports the decision. *See Anderson v. Astrue*, 696 F.3d 790, 793

(8th Cir. 2012) (citing *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)). The ALJ's

determination must be affirmed even if substantial evidence would also support the

opposite finding. *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citation

omitted). The Court finds that based on the further developed record as a whole, there is

substantial evidence to support the ALJ's assignment of little weight to Dr. Lewis's

opinion and her decision to exclude the twenty to thirty-minute limitation from Plaintiff's

RFC.

18

In the alternative, Plaintiff argues that to the extent that Dr. Butler is correct that Dr. Lewis's opinion is unsupported by the record, the ALJ had a duty to further expand the record. This Court's prior order remanding this matter, however, did not dictate a result to the ALJ and instruct her to find evidence to support the limitation. Instead, this Court's order provided that if the ALJ determined that Dr. Lewis's conclusions on their own are insufficient to properly determine the RFC, then the record must be further developed to determine Plaintiff's limitations relating to remembering instructions. The ALJ developed the record to include the opinion of an independent medical expert, Dr. Butler. The record as a whole and substantial evidence now supports the ALJ's conclusions regarding the weighing of Dr. Lewis's opinion.

### B.     Plaintiff's Impairments Under Listings 12.02 and 12.04

The Court now turns to Plaintiff's second argument concerning whether Plaintiff's mental impairments meet the requirements of Listings 12.02 and 12.04. (*See* Pl.'s Mem. in Supp. 16–19.) Listing 12.02 addresses neurocognitive disorders, which are characterized by a clinically significant decline in cognitive functioning. Symptoms and signs may include, but are not limited to, disturbances in memory, executive functioning (that is, higher-level cognitive processes; for example, regulating attention, planning, inhibiting responses, decision-making), visual-spatial functioning, language and speech, perception, insight, judgment, and insensitivity to social standards. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.B.1.a. Listing 12.02 is met or equaled when there is "[m]edical documentation of a significant cognitive decline from a prior level of functioning in one or more . . . cognitive areas" (the "A" criteria) accompanied by

"[e]xtreme limitation of one, or marked limitation of two," area(s) of mental functioning

(the "B" criteria). *Id.* § 12.02.A, B. Listing 12.04, meanwhile, addresses depressive,

bipolar and related disorders, which

> are characterized by an irritable, depressed, elevated, or expansive mood, or
> by a loss of interest or pleasure in all or almost all activities, causing a
> clinically significant decline in functioning. Symptoms and signs may
> include, but are not limited to, feelings of hopelessness or guilt, suicidal
> ideation, a clinically significant change in body weight or appetite, sleep
> disturbances, an increase or decrease in energy, psychomotor abnormalities,
> disturbed concentration, pressured speech, grandiosity, reduced impulse
> control, sadness, euphoria, and social withdrawal.

20 C.F.R. § Pt. 404, subpt. P, app. 1, § 12.00.B.3.a. Listing 12.04 is met or equaled when

there is "[m]edical documentation of" either depressive disorder or bipolar disorder (the

"paragraph A" criteria) accompanied by "[e]xtreme limitation of one, or marked

limitation of two," area(s) of mental functioning (the "paragraph B" criteria). *Id.*

§ 12.04.A, B.

Plaintiff's appeal is focused on the Paragraph B criteria, which "represent the

areas of mental functioning a person uses in a work setting. They are: Understand,

remember, or apply information; interact with others; concentrate, persist, or maintain

pace; and adapt or manage oneself." *Id.* § 12.00.A.2.b; *see id.* § 12.02.B; 12.04.B; *see

also* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The paragraph B criteria are

evaluated on a five-point scale ranging from no limitation, to an extreme limitation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.F.2; *see* 20 C.F.R. §§ 404.1520a(c)(4),

416.920a(c)(4). A moderate limitation means the claimant's ability to function in that

area "independently, appropriately, effectively, and on a sustained basis is fair." 20

C.F.R. pt. 404, subpt. P, app. 1, § 12.00.F.2.c. The next level in severity is a "marked"

limitation, meaning that the claimant's functioning "is seriously limited." *Id.*

§ 12.00.F.2.d. The next and final level is "extreme" limitation, which means a claimant is

"not able to function in th[e] area independently, appropriately, effectively, and on a

sustained basis." *Id.* § 12.00.F.2.e.

In assessing the paragraph B criteria, the ALJ found that Plaintiff had a moderate

limitation in understanding, remembering, or applying information (Tr. 704); a moderate

limitation in interacting with others (*id.* at 707); a moderate limitation in concentrating,

persisting, or maintaining pace (*id.* at 708); and marked limitation in adapting and

managing oneself (*id.* at 704-09). Thus, without an "[e]xtreme limitation of one, or

marked limitation of two," Plaintiff did not satisfy the paragraph B criteria of Listings

12.02 or 12.04.

In his appeal, Plaintiff argues that the ALJ erred in reaching her conclusion that

Plaintiff has only a moderate limitation in his ability to concentrate, persist, or maintain

pace. The area of concentration, persistence, or pace –

> refers to the abilities to focus attention on work activities and stay on task at
> a sustained rate. Examples include: Initiating and performing a task that
> you understand and know how to do; working at an appropriate and
> consistent pace; completing tasks in a timely manner; ignoring or avoiding
> distractions while working; changing activities or work settings without
> being disruptive; working close to or with others without interrupting or
> distracting them; sustaining an ordinary routine and regular attendance at
> work; and working a full day without needing more than the allotted
> number or length of rest periods during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.E.3. Specifically, Plaintiff asserts that

standardized psychological testing puts his processing speed in the 4th percentile and that

this demonstrates a marked limitation related to pace, and thus directs the rating of limitation of that whole area of mental functioning. (Pl.'s Mem. in Support 18–19.) According to Plaintiff, the ALJ's analysis of these factors should have resulted in two "marked" limitations to satisfy the Medical Listing.

When evaluating mental impairments, all relevant medical evidence must be considered, including physicians and psychologists as well as other medical sources. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.C.2; *see id.* § 12.00.F.3.a. Evidence from the claimant and individuals who know the claimant is also considered. *Id.* § 12.00.C.3; *see id.* §§ 12.00.C.5.b, F.3.a. In deciding the degree of limitation, "[t]he medical evidence may include descriptors regarding the diagnostic stage or level of . . . [a claimant's] disorder, such as 'mild' or 'moderate,'" and that "[c]linicians may use these terms to characterize . . . [a claimant's] medical condition." *Id.* § 12.00.F.3.a. The regulations caution, however, that such terms will not always equate with the degree of limitation for purposes of the paragraph B criteria. *Id.* Further, the regulations provide that "no single piece of information (including test results) can establish the degree of limitation of an area of mental functioning." *Id.* § 12.00.F.3.d.

Plaintiff asserts that the ALJ erred because testing showed Plaintiff's processing speed is in the 4th percentile, and such a result necessarily equates to a marked limitation in pace, which if true would then determine the degree of limitation for the entire "concentration, persistence, and pace" criterion. (Pl.'s Mem. in Support 18–19.) This single test result, however, does not compel the ALJ to rate the area of "pace" as marked. The ALJ must make her determination of Plaintiff's limitations based on substantial

22

evidence in the record as a whole. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.F.3.d.;

*see Schake v. Berryhill*, No. 0:17-CV-01831-KMM, 2018 WL 4469250, at *10 (D. Minn.

Sept. 18, 2018) (stating that a Plaintiff's "ability to point to evidence that detracts from

the ALJ's finding" that he has a moderate limitation as to concentration, persistence, and

pace does not compel the conclusion "that the ALJ erred") (citing *Bates v. Chater*, 54

F.3d 529, 532 (8th Cir. 1995)).

The ALJ addressed the record as a whole in her determination that Plaintiff has a

moderate limitation in the area of concentration, persistence, and pace. For example, the

ALJ discussed Dr. Butler's testimony at the remand hearing. (Tr. 772.) Dr. Butler

testified, after noting Plaintiff's various test results, that Plaintiff's "ability to concentrate,

maintain persistence and pace was moderately impaired." (*Id.*) Specifically, Dr. Butler

noted that that Plaintiff put forth good effort on all exam testing, focused on the tasks,

and reported playing video games, watching movies, and reading comics with no

difficulty. (*See id.* at 532.) Plaintiff was able to recite the alphabet, count backward from

twenty, count forward by both ones and threes, and count backward from one hundred by

serial sevens. (*Id.* at 536.) The ALJ also observed that while Plaintiff's mother indicated

he has a short attention span and sometimes forgets to eat, Plaintiff also finishes things

once started, and is able to go grocery shopping with a list. (*Id.* at 708.) In her decision,

the ALJ acknowledged Plaintiff's test results, including Plaintiff's WAIS-IV report

showing a score of 74 for processing speed, placing Plaintiff in the 4th percentile. Taking

this into account, the ALJ determined that "the overall evidence supports no more than

'moderate" restriction in the domain of concentrating, persisting or maintaining pace."
(*Id.*)

Here, the ALJ explained how "concentration, persistence, or pace" was "treated in a manner that allows the Court to determine whether the ALJ's decision is supported by substantial evidence in the record as a whole." *See Stacey S. v. Saul*, No. 18-CV-3358 (ADM/TNL), 2020 WL 2441430, at *15 (D. Minn. Jan. 30, 2020), *report and recommendation adopted*, No. CV 18-3358 ADM/TNL, 2020 WL 1271163 (D. Minn. Mar. 17, 2020). In *Stacy S.*, it was "unclear what the ALJ relied upon in concluding that Plaintiff had moderate limitation in her ability to maintain concentration, persistence, or pace." *Id.* at *14. Magistrate Judge Tony Leung noted that "[t]his [was] in contrast with the ALJ's discussion of the remaining B criteria, in which the ALJ provided some explanation as to what was considered in determining the degree of limitation." *Id*. For example, the ALJ discussed the plaintiff's ability to understand, remember, or apply information and ability to interact with others. However, the ALJ's decision in *Stacy S.* contained "no such discussion with respect to Plaintiff's ability to maintain concentration, persistence, or pace." *Id.* The court concluded that it could not "speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave." *Id*. at *15. In contrast, here, the ALJ explained her reasoning with respect to "concentration, persistence, or pace," including a discussion of the test results at issue. Further, the ALJ discussed Dr. Butler's testimony at the hearing and put the test result that Plaintiff relies upon in context with the other evidence in reaching her

opinion that Plaintiff's limitation with respect to "concentration, persistence, or pace" was moderate. (Tr. 708–09.)

The Court finds that substantial evidence in the record as a whole supports the ALJ's finding that Plaintiff has a moderate limitation as to concentration, persistence, and pace. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Chong Vang v. Colvin*, 934 F. Supp. 2d 1054, 1060 (D. Minn. Mar. 20, 2013) (citation omitted). The Court will "not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (internal quotations and citations omitted). "Rather, if, after reviewing the record, we find that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the decision of the Commissioner." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (internal quotations, alteration, and citations omitted).

## ORDER

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 18) **DENIED**;

2.    Defendant's Motion for Summary Judgment (Doc. No. 21) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 28, 2020                          *s/ Becky R. Thorson*_____
                                                 BECKY R. THORSON
                                                 United States Magistrate Judge